IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SALT AND LIGHT ENERGY EQUIPMENT, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No.  3:22-CV-00654-N |
| ORIGIN BANCORP, INC., | § § | |
| Defendant /Counter-Plaintiff. | § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Origin Bancorp, Inc.'s ("Origin") motion for partial summary judgment [122].[1]  The Court finds that no genuine dispute of material fact exists as to Plaintiff Salt and Light Energy Equipment, LLC's ("SNLEE") claims or Origin's counterclaims.  Accordingly, the Court grants Origin's motion and dismisses both of SNLEE's claims and all SNLEE's affirmative defenses.  The Court grants partial summary judgment of liability on Origin's breach of contract claims and dismisses Origin's equitable claims as moot.

## I. ORIGINS OF THE DISPUTE

In 2019 Origin loaned SNLEE up to three million dollars "under a loan agreement with a Note, secured by a Security Agreement encumbering all of SNLEE's assets, . . . and a guaranty executed by SNLEE's principals, Counter-Defendants Shawn and Denise

---

[1] This Order also addresses SNLEE's motion for partial summary judgment [113].
MEMORANDUM OPINION AND ORDER – PAGE 1

Mudigere" ("the Guarantors") (the Note, Security Agreement, Extensions and Modifications, and Guaranty, together the "Loan"). Def.'s Mot. Summ. J. 3. The Loan matured in 2019 and SNLEE was unable to pay. Def.'s App. 636-47 [128]. As a result, Origin agreed to nine extensions and forbearances on foreclosing so SNLEE could find a replacement lender. *Id.* at 184-233, 648-50. Each of the extensions and forbearances waived any claims or causes of action by SNLEE arising against Origin as a condition of the agreements. *Id.* at 184-233. The Loan matured a final time on March 4, 2021, and SNLEE still could not pay. *Id.* at 598. Origin still gave SNLEE several additional months to secure finances to pay off the loan instead of sending notice letters to SNLEE's account debtors that payments to SNLEE should go directly to Origin. Def.'s Mot. Summ. J. 4-5.

In late July, Origin informed SNLEE that time was nearly up and if SNLEE did not secure an alternate lender, Origin would take action on SNLEE's accounts receivable. Def.'s App. A.8, 98-99. Shawn Mudigere promised he would have replacement financing executed by July 30, 2021, which did not occur. *Id.* at A.8, 660-61. Instead, on August 3, 2021, Mr. Mudigere asked Origin to extend him further credit, without any mention of signing an alternate lending agreement. *Id.* at A.9, 107. As a result, on August 5, 2021, Origin acted on its deep doubts of SNLEE's earnest efforts to find alternate lending and sent notice letters to sixty-four of SNLEE's account debtors, including ProPetro, informing them that all payments to SNLEE should now go to Origin. *Id.* at 240-41. The following day, Origin filed a suit in federal court against SNLEE and the Guarantors alleging various breaches of contract. Def.'s Mot. Summ. J. 7. Origin dismissed this first lawsuit without prejudice and released its lien in exchange for an agreement with Amerisource, a factoring

MEMORANDUM OPINION AND ORDER – PAGE 2

company, to take over funding SNLEE as a partial payoff of the loan.  Def.'s App. 87-95, 614, 653-55.  As part of this agreement, Origin agreed to make a personal loan to the Guarantors, a portion of which would be used to further pay down the Loan and pay off the amounts owed to the IRS.  *Id.* at 656-57.  None of the above agreements was explicitly detailed in writing.  *Id.* at A.11.  Origin reasserts its breach of contract claims in response to this litigation.  Def.'s An. and Counterclaims ¶¶ 108-129 [34].

The instant case derives from a claim made by SNLEE that Origin sent notice letters in a commercially unreasonable manner in violation of Sections 9.607(c) and 1.305 of the Texas Business and Commerce Code.[2]  Pl.'s Second Am. Compl. ¶¶ 14-16, 33-34.  SNLEE alleges that when Origin sent the notice letters, SNLEE was in the final stages of securing a substitute lender.  *Id.* at ¶ 13.  Due to this, SNLEE asserts that the notice letters were premature and improper, and more specifically, that the notice letter Origin sent to ProPetro, an oil and gas outfit in Midland, Texas, caused ProPetro to terminate SNLEE as a vendor.  *Id.* at ¶¶ 15, 21.  SNLEE's expert, however, confirmed that Origin had a contractual right to send such notice letters once SNLEE defaulted in March.  Def.'s App., Koontz Dep. 580.  Furthermore, SNLEE's own expert confirmed that there was nothing wrong with the content of the letters themselves.  *Id.* at 585.  SNLEE's second claim, business disparagement, arises from a call between ProPetro and Origin regarding the notice letter that ProPetro received, and SNLEE alleges that Origin "made materially false representations to ProPetro concerning [SNLEE]'s financial position," which also caused

---

[2] All relevant sections of the Texas Business and Commerce Code fall into title 1 – Uniform Commercial Code ("UCC") – of the code, and hereafter, the Court will specifically use "UCC" in reference to claims arising from the Texas Business and Commerce Code.

ProPetro to terminate its business relationship with SNLEE.  Pl.'s Second Am. Compl. ¶¶ 19, 21.

Rewinding to May 2021, long before Origin sent its notice letters, ProPetro internally decided to start phasing out vendors like SNLEE eventually to handle pump packing[3] internally.  Def.'s Mot. Summ. J. 9.  Foster, the decision-maker and corporate representative of ProPetro, as well as many other witnesses, explained that the reasons for ProPetro terminating its relationship with SNLEE specifically had to do with pricing, inventory, and other business concerns.  *Id.*  It is undisputed that Foster was ProPetro's final decision-maker regarding vendors and that at no time did others at ProPetro express doubts or objections to phasing out SNLEE.  *Id.* at 9-10.  ProPetro took affirmative steps in phasing out SNLEE over the summer of 2021 in accordance with the May 2021 plan. *Id.* at 10.  First ProPetro cut two SNLEE crews and a field team that summer.  *Id.*  Then ProPetro asked SNLEE to reduce its rate from $75 per hour and SNLEE refused.  *Id.* ProPetro employees testified that ProPetro's decision to terminate had nothing to do with anything Origin said or did.  *Id.* at 10-11.  In accordance with the May 2021 plan, ProPetro made the official decision to terminate SNLEE in November 2021 and fully phased out SNLEE as a vendor by the end of February 2022.  *Id.* at 11; Def.'s App. 708.

## II.  SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[3] Pump packing is a sealing method used in pumps.  *What Is Pump Packing?*, GETTING TO KNOW PUMP PACKING (Oct. 2023), https://www.callapg.com/blog-getting-to-know-pump-packing.

FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, he "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted).  When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense.  *Celotex*, 477 U.S. at 322–25.

Once the movant has made the required showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts."  *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

MEMORANDUM OPINION AND ORDER – PAGE 5

### III.  SNLEE CANNOT SHOW CAUSATION
### ON ITS BUSINESS DISPARAGEMENT CLAIM

Origin moves for summary judgment against SNLEE's business disparagement claim.  SNLEE claims that during a phone call with ProPetro, Origin "published disparaging and false words about [SNLEE]'s economic interests," and those statements caused ProPetro to terminate SNLEE.  *Id.* at ¶¶ 37, 40.  SNLEE does not address foreseeability anywhere in its causation argument, which on its own is enough to dismiss its business disparagement claim.  Additionally, SNLEE fails to establish that anything Origin said or did was a substantial factor in causing ProPetro to terminate SNLEE.  Accordingly, the Court grants Origin summary judgment on SNLEE's business disparagement claim.

#### A.   *SNLEE Fails to Address Foreseeability in Its Causation Argument*

Causation in a business disparagement context requires evidence that what the defendant purportedly communicated "played a substantial part in inducing third parties not to deal with the plaintiff, resulting in a direct pecuniary loss that has been realized or liquidated, such as specific lost sales, loss of trade, or loss of other dealings." *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 625 (Tex. App.—Fort Worth 2007, pet. denied), abrogated on other grounds by *Dallas Symphony Ass'n, Inc. v. Reyes*, 571 S.W.3d 753 (Tex. 2019) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W. 2d 762, 767 (Tex. 1987)); *see also* RESTATEMENT (SECOND) OF TORTS § 632(a) & cmt. b (1977).  This definition mirrors the "cause in fact" definition utilized in most tort causation analysis.  *See IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004) (citations omitted) (An act or omission is a cause in fact "when the act or omission

MEMORANDUM OPINION AND ORDER – PAGE 6

was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred."). SNLEE only addresses the "substantial factor" element of causation but does not address foreseeability. *See* Pl.'s Resp. 18. The application of foreseeability to the causation analysis of a business disparagement claim is where the parties disagree. The Court determines foreseeability is necessary for causation in a business disparagement claim.

Generally, torts liability in Texas has two primary causation standards: proximate cause and producing cause. *See Prudential Ins. Co. of Am. v. Jefferson Associates, Ltd.*, 896 S.W.2d 156, 160-61 (Tex. 1995); *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995), abrogated on other grounds by *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007). "Proximate cause has two elements: cause in fact and foreseeability." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). Whereas producing cause has the cause in fact element, like proximate cause, but not the foreseeability element. *See Ledesma*, 242 S.W.3d at 46; *Union Pump*, 898 S.W.2d at 775.

The *Hurlbut* court noted that the Restatement "identifies [business disparagement] by the name 'injurious falsehood.'" *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987); *see also* Restatement (Second) of Torts § 623A (1977). The Restatement does specify a foreseeability element for injurious falsehood. *See id.* at comment b ("The publisher must, however, know enough of the circumstances so that he should as a reasonable man recognize the likelihood that some third person will act in reliance upon his statement, or that it will otherwise cause harm to the pecuniary interests of the other because of the reliance."). Furthermore, Texas Courts recognized that "[a] business

MEMORANDUM OPINION AND ORDER – PAGE 7

disparagement claim is similar in many respects to a defamation action," the primary difference between the two causes of action being the interests they protect. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (citing *Hurlbut*, 749 S.W.2d at 766). An actionable defamation claim requires that the publication of a false statement of fact to a third party "proximately caused damages." *Anderson v. Durant*, 550 S.W.3d 605, 617-18 (Tex. 2018). With this context in mind, the Court holds that proximate cause is the proper causation standard for business disparagement as well.[4] Accordingly, SNLEE's business disparagement argument fails due to SNLEE's failure to address foreseeability in its causation argument.[5]

### B. No Act by Origin Was a Substantial Factor Causing ProPetro to Terminate SNLEE

Regardless of which causation standard applies, both proximate cause and producing cause require "cause in fact" as an element to be shown. A party can establish cause in fact by producing evidence that shows that, but for the defendant's conduct, "the harm would not have occurred." *Rattray v. City of Brownsville*, 662 S.W.3d 860, 874 (Tex.

---

[4] Furthermore, under Texas law, "[n]egligence requires a showing of proximate cause, while producing cause is the test in strict liability." *Union Pump*, 898 S.W.2d at 775. SNLEE provides no argument why producing cause is the proper causation standard or why business disparagement claim should have strict liability applied to it.

[5] SNLEE does address foreseeability in its damages argument. *See* Pl.'s Resp. 25 (quoting *DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160 (Tex. App.—Fort Worth 2012, no pet.) ("However, lost profits that represent the benefit-of-the-bargain measure of damages required to restore the plaintiff to the economic position he would have enjoyed if the contract had been performed are 'direct' damages when shown to be 'conclusively presumed' to have been foreseen by the parties as a usual and necessary consequence of a breach." (citation omitted))). Even if the Court were to make the inferential leap and applied this argument to SNLEE's causation argument, SNLEE's causation argument also fails because SNLEE does not establish the "cause in fact" element of its causation argument, as discussed further in Section III.B, *infra*.

MEMORANDUM OPINION AND ORDER – PAGE 8

2023) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex. 1985)).  And as previously stated, the fact that the harm would not have occurred had the actor not acted wrongfully is not enough on its own – the act "must also be a substantial factor in bringing about the plaintiff's harm."  *Lear Siegler Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex. 1991) (quoting RESTATEMENT (SECOND) OF TORTS § 431 cmt. a (1965)); *see also Doe v. Boys Clubs*, 907 S.W.2d 472, 477 (Tex. 1995).  SNLEE fails to establish a fact issue regarding whether anything Origin said or did was a substantial factor in causing ProPetro to terminate SNLEE.

"Under Texas law, causation generally is a question of fact for the jury."  *Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 237 (5th Cir. 2003).  However, a lack of causation "may be established as a matter of law where the circumstances are such that reasonable minds could not arrive at a different conclusion."  *Ely v. Gen. Motors Corp.*, 927 S.W.2d 774, 781 (Tex. App.—Texarkana 1996, writ denied) (citing *Lear Siegler*, 819 S.W.2d at 471).  Reasonable minds could not conclude that any action taken by Origin was a substantial factor in ProPetro terminating its relationship with SNLEE because Origin submits substantial, unrefuted summary judgment evidence establishing that ProPetro already had a plan in place to terminate SNLEE and took steps towards that plan long before ProPetro received Origin's notice letter.

Origin's summary judgment evidence establishes that in May 2021, months before Origin sent the notice letter, ProPetro had a plan to reduce prices and eventually phase out SNLEE to handle pump packing internally.  *See* Def.'s App. 347-49.  Testimony from ProPetro witnesses corroborates that ProPetro made a plan to handle pump packing

MEMORANDUM OPINION AND ORDER – PAGE 9

internally and phase out third-party vendors like SNLEE starting in May 2021. *Id.*, Foster Dep. 252-58, Munoz Dep. 506, Carrasco Dep. 513-15, Hernandez Aff. 562. SNLEE offers no summary judgment evidence to contradict the existence of this plan. Origin's summary judgment evidence establishes that ProPetro asked SNLEE to reduce prices to $67/hr. in June 2021 — a step in direct accordance with the phase out plan. *Compare id.* at 609, *with id.* at 349. SNLEE offers no evidence that ProPetro at any point between May and August 2021 decided to abandon its plan to phase out third-party vendors. In fact, SNLEE was fully phased out as a vendor by the first quarter of 2022, in direct accordance with the May 2021 plan. Pl.'s Resp. 8; Def.'s App. 349. Testimony from ProPetro witnesses corroborates that ProPetro's largest motivators for phasing out SNLEE were costs and the desire to handle pump packing internally. Def.'s App., Foster Dep. 253-55, 260-61, Carrasco Dep. 524-25, Dominguez Dep. 545-46, 551-52, Hernandez Aff. 562.

The final thread on which SNLEE's causation argument hangs is that ProPetro's May 2021 plan focused on bringing pump packing services in-house and never contemplated ending ProPetro's entire business arrangement with SNLEE by also terminating the purchase of equipment and inventory from SNLEE, another service SNLEE provided. ProPetro. Pl.'s Resp. 9. Regardless, testimony from ProPetro witnesses corroborates that ProPetro's decision to terminate its relationship with SNLEE had nothing to do with anything Origin did or said. Def.'s App., Foster Dep. 261-64, Dominguez Dep. 535, Hernandez Aff. 562. Furthermore, Foster expressed other issues with SNLEE that led to the termination including performance and invoicing issues and confirmed that Origin had nothing to do with ProPetro's decision to terminate SNLEE. *Id.* at Foster Dep. 248-

MEMORANDUM OPINION AND ORDER – PAGE 10

51, 297-98, 353-56.  No ProPetro witness disputed the fact that Foster, as director of the supply chain, was the final decision-maker at ProPetro regarding vendors.  *Id.* at Foster Dep. 296-97, Munoz Dep. 501, Carrasco Dep. 511-12, Dominguez Dep. 533-34.

The Parties dispute the admissibility of piecemeal recordings of a ProPetro meeting held regarding SNLEE as a vendor after ProPetro received the notice letter and had a phone call with Origin's attorney regarding the notice letter.  *See generally* Pl.'s Objection [148]; Def.'s Mot. Leave to File Mot. to Strike [149].  SNLEE relies on the recordings to support its argument that a fact issue exists regarding whether Origin caused ProPetro to terminate its relationship with SNLEE.  *See generally* Pl.'s Resp. 6-8.  At this time the Court does not rule on the recordings' admissibility because, even if admissible, these recordings do not create a fact issue regarding whether ProPetro already had a plan to phase out third-party vendors like SNLEE, that ProPetro already took affirmative steps to phase out SNLEE in accordance with that plan, and that no evidence exists that at any time prior to the August 5, 2021, meeting that ProPetro abandoned its plan set in May 2021 to phase out third party vendors like SNLEE.

SNLEE's final causation argument is that the temporal proximity between ProPetro's receiving the notice letter on August 5, 2021, and subsequent conversation with Origin regarding the notice letter and ProPetro's decision to terminate SNLEE in November 2021 sufficiently establishes causation.  SNLEE points to Fifth Circuit precedent that allows temporal proximity on its own to prove causation.  Pl.'s Resp. 22. But SNLEE is confused.  First, all cases cited by both parties involved an employment law retaliation claim — a claim not at issue here.  Even if the temporal proximity factor used

MEMORANDUM OPINION AND ORDER – PAGE 11

in discrimination cases applied to SNLEE's claim, temporal proximity alone is only enough to prove a prima facie case for causation.  In the summary judgment context, the Fifth Circuit "affirmatively reject[s] the notion that temporal proximity standing alone can be sufficient proof of but for causation."[6]  *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007); *see also Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 782 (Tex. 2018) (citing *Strong* for the assertion that "[t]he but-for causation standard is significantly more difficult to prove than prima facie causation").  Accordingly, SNLEE's proffered temporal proximity evidence alone is insufficient to show that ProPetro's given reasons for terminating SNLEE are only pretextual.  The Court cannot overlook the overwhelming witness testimony corroborating ProPetro's given reasons for terminating SNLEE.  Thus, the Court concludes that Origin established that no fact issue exists regarding ProPetro's independent decision to phase out SNLEE and that nothing said or done by Origin was a substantial factor in causing ProPetro to terminate SNLEE.  Accordingly, the Court dismisses SNLEE's business disparagement claim against Origin.

### IV.  SNLEE'S REQUESTED DAMAGES ARE PRECLUDED UNDER THE UCC

Origin moves for summary judgement against SNLEE's claims under Sections 9.607(c) and 1.304 of the UCC.  Def.'s Mot. Summ. J. 1.  SNLEE claims that Origin breached its duty of good faith as required by Section 1.304 when Origin used allegedly commercially unreasonable efforts to collect on SNLEE's accounts receivable in violation

---

[6] Texas courts use "cause in fact" and "but for cause" interchangeably.  *See*, *e.g.*, *Excel Corp. v. Apodaca*, 81 S.W.3d 817, 820 (Tex. 2002) ("The test for cause in fact, or 'but for cause,' is whether the act or omission was a substantial factor in causing the injury 'without which the harm would not have occurred.'" (quoting *Boys Clubs*, 907 S.W.2d. at 477)).

MEMORANDUM OPINION AND ORDER – PAGE 12

of Section 9.607(c).  Pl.'s Second Am. Compl. ¶¶ 33-34.  SNLEE argues that Origin's commercially unreasonable actions caused ProPetro to terminate its relationship with SNLEE.  Pl.'s Resp. 1-2 [136].  SNLEE seeks damages in the form of lost profits from the termination of its relationship with ProPetro pursuant to Section 9.625(b) of the UCC.  Pl.'s Second Am. Compl. ¶¶ 29, 33-35.  Because the Court determines that SNLEE's lost profits damages qualify as consequential damages and consequential damages are unavailable under this provision, the Court grants summary judgment on SNLEE's UCC sections 9.607(c) and 1.304 claims.

Texas law often interchangeably characterizes lost profits from a lost business opportunity as consequential or special damages.  *See Signature Indus. Servs., LLC v. Int'l Paper Co.*, 638 S.W.3d 179, 189 (Tex. 2022); *Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex. 1998) (per curiam) (categorizing an attorney's claim for loss of fees on other cases as consequential damages); *Mood v. Kronos Prods.*, 245 S.W.3d 8, 12 (Tex. App.—Dallas 2007, pet. denied) ("Lost profits may be in the form of direct damages, that is, profits lost on the contract itself, *or in the form of consequential damages, such as profits lost on other contracts or relationships resulting from the breach.*" (emphasis added)).  Importantly, the UCC generally precludes consequential or special damages.  TEX. BUS. & COM. CODE § 1.305(a) ("[N]either consequential or special damages nor penal damages may be had except as specifically provided in this title or by other rule of law.").

To rebut this general presumption against awarding consequential damages, SNLEE points to Section 9.625(b) of the code which states: "a person is liable for damages in the amount of *any loss* caused by a failure to comply with this chapter."  TEX. BUS. & COM.

MEMORANDUM OPINION AND ORDER – PAGE 13

CODE § 9.625(b) (emphasis added).  However, SNLEE does not cite a single case in which Section 9.625 allows for consequential damages.  Furthermore, a court in this district held that consequential damages are not allowed under Section 9.625.  *See Steinberg v. Cinema 'N' Drafthouse Sys., Inc.*, 1997 WL 160183, at *3 (N.D. Tex. Apr. 1, 1997), *aff'd sub nom. Steinberg v. Cinema N' Drafthouse Sys., Inc.*, 135 F.3d 140 (5th Cir. 1997).[7]  Other courts examining this question came to same conclusion: UCC section 9.625 does not permit consequential damages.  *See Forthill Constr. Corp. v. Blue Acquisition*, LLC, 2020 WL 949256, at *2 (S.D.N.Y. Feb. 27, 2020); *Suffield Bank v. LaRoche*, 752 F. Supp. 54, 62 (D.R.I. 1990); *Proactive Techs., Inc. v. Denver Place Assocs. Ltd. P'ship*, 141 P.3d 959, 961 (Col. Ct. App. 2006).  Accordingly, the court holds that Section 9.625 does not allow consequential damages.

SNLEE alternatively argues that "[l]ost profits can either be direct or consequential damages, depending on their nature," and thus if consequential damages are unavailable, lost profits should be permitted as a form of direct damages.  Pl.'s Resp. 25 (*citing DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 180 (Tex. App.—Fort Worth 2012, no pet.).  The *DaimlerChrysler* court explains "lost profits that represent the benefit-of-the-bargain measure of damages required to restore the plaintiff to the economic position he would have enjoyed if the contract had been performed are 'direct' damages when shown to be 'conclusively presumed' to have been foreseen by the parties as a usual and necessary consequence of a breach."  *DaimlerChrysler Motors Co., LLC v. Manuel*,

---

[7] This case discusses UCC Sections 9.507 and 1.106, the predecessors to UCC Sections 9.625 and 1.305.

MEMORANDUM OPINION AND ORDER – PAGE 14

362 S.W.3d 160, 181 (Tex. App.—Fort Worth 2012, no pet.). SNLEE argues that "Origin's contacts deprived SNLEE of the benefits of its contract with ProPetro, and Origin should have foreseen that the consequences of its actions *could have* resulted in SNLEE losing the benefits of its contract," making the requested lost profits direct damages. Pl.'s Resp. 25 (emphasis added). The Court disagrees. "Could" is not conclusive and SNLEE does not make any argument regarding how Origin's actions should have been "conclusively presumed" to cause ProPetro to terminate SNLEE resulting in damages.

Furthermore, SNLEE's contract with ProPetro was terminable at will. *See* Def.'s App. 331-46. Any damages awarded in contract cases are based in an assumption of the continuation of a contract, an assumption Texas courts require to be backed by evidence. *See Pura-Flo Corp. v. Clanton*, 635 S.W.3d 637, 640 (Tex. 2021) (holding that lost future profits for a terminable-at-will contract was too uncertain or speculative because "no evidence indicated the contract would endure for any length of time . . . ."); *Szczepanik v. First S. Tr. Co.*, 883 S.W.2d 648, 650 (Tex. 1994) (finding that the "evidence [was] legally insufficient to show lost profits because there is no evidence that [plaintiff] could have expected to retain all of [the] accounts for any period of time"). SNLEE's only evidence to support the continuation of the contract was the fact that SNLEE and ProPetro worked together since 2014. *See* Pl.'s App. Resp. Mot. Summ. J. 185 [129]. As stated by the Texas Supreme Court in *Pura-Flo*, past actions cannot "be the basis for an award of *future* damages, which, as evidenced by its name, is an award for damages that [Plaintiff] was reasonably certain to incur in the *future*." *Pura-Flo*, 635 S.W.3d at 640 (emphasis in original). As discussed in Section III, *supra*, SNLEE cannot argue the assumption of the

MEMORANDUM OPINION AND ORDER – PAGE 15

continuation of its contract with ProPetro with reasonable certainty because Origin offers ample, unrebutted evidence that ProPetro already had a plan in place to terminate SNLEE as a vendor. *See* Section III.B, *supra*.  Accordingly, the Court concludes that SNLEE's lost profits damages cannot be classified as direct damages because they could not have been "conclusively presumed."  As a result, the Court holds that SNLEE's damages are precluded under the UCC and the Court dismisses SNLEE's UCC claims.

## V.  THE COURT GRANTS SUMMARY JUDGMENT ON ORIGIN'S CONTRACT CLAIMS

Origin moves for summary judgment on two of its claims: (1) breach of the Note with SNLEE, and (2) breach of the Guaranty against the Guarantors. To prevail on a breach of contract claim, a party must prove "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff as a result of the defendant's breach." *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018) (quoting *Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 95-96 (Tex. App.—Eastland 2010, pet. denied); *accord MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 61 (Tex. App.—San Antonio 2005, no pet.); *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).  SNLEE does not dispute the factual grounds that Origin establishes to satisfy each element of breach of contract for both breach of the Note and breach of the Guaranty.  Instead, SNLEE argues that Origin is barred from recovery because (1) the Parties settled all of Origin's claims through a settlement agreement made during the August 2021 meeting, or in the alternative, (2) the Parties

modified the agreement to nullify the waiver-of-defenses and payment provisions of the Agreement.  Pl.'s Resp. 45.

### A.  No Settlement Agreement Exists as a Matter of Law

As an initial matter, the Fifth Circuit "appl[ies] Texas law to the enforcement of settlement agreements in Texas diversity cases."  *Valley Ranch Dev. Co., Ltd. v. F.D.I.C.*, 960 F.2d 550 (5th Cir. 1992) (citation omitted).  Under Texas law, "no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."  Tex. R. Civ. P. 11.  By SNLEE's own admission, a suit between the Parties was pending when the Parties met in August 2021; therefore, any settlement agreement would fall squarely under Rule 11.  Pl.'s Resp. 46 ("Origin initiated the August 2021 meeting with the expectation and hope of fully settling the pending lawsuit.").  SNLEE offers no summary judgment evidence that the alleged settlement agreement adhered to Rule 11's clear parameters.   SNLEE does offer evidence memorializing Amerisource's taking over of the Loan and evidence of various contracts SNLEE argues are consistent with the alleged settlement agreement.  Def.'s App. 88; Pl.'s App. 198, 254.  Though Texas courts have allowed separate documents collectively to represent a settlement agreement, *see Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995), SNLEE's documents together do not satisfy the "in writing" provision of Rule 11.

"To satisfy the 'in writing' component of Rule 11, the contract principles that are used in determining whether a 'writing' satisfies the statute of frauds apply equally to Rule 11 agreements."  *Green v. Midland Mortg. Co.*, 342 S.W.3d 686, 690-91 (Tex. App.—

Houston [14th Dist.] 2011, no pet.) (quoting *Padilla*, 907 S.W.2d at 460). Accordingly, "there must be a written memorandum which is complete within itself in every material detail, and which contains *all of the essential elements of the agreement*, so that the contract can be ascertained from the writings *without resorting to oral testimo*ny." *Padilla*, 907 S.W.2d at 460 (emphasis added) (quoting *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978). SNLEE fails to show how the documents cited memorialize all essential elements of the alleged settlement agreement. At the very least, the Court would have to rely on oral testimony to make the inferential leap that these documents together represented Origin's agreement to settle the Loan Balance and drop the lawsuit in exchange for a Partial Payoff. The Court declines to do so.

The Court will apply the clear language of Rule 11 because "[t]he purpose of Rule 11 is to forestall the 'misunderstandings and controversies' that often attend oral agreements between counsel," as is precisely at issue in this instant case. *Kirby v. State Farm Lloyds'*, 663 F. Supp. 3d 656, 668 (N.D. Tex. 2023) (quoting *Padilla*, 907 S.W.2d at 460). Accordingly, the Court holds no settlement agreement was reached by Origin and SNLEE and every affirmative defense that rests on the existence of a settlement agreement fails as a matter of law.[8]

---

[8] SNLEE also argues that "[e]ven without written contracts expressly memorializing a settlement's terms, settlement agreements may be oral." Pl.'s Resp. 45 (citing *Gilbert v. Fitz*, 2016 WL 7384167, at *6 (Tex. App.—Dallas Dec. 21, 2015, no pet.). But Rule 11 did not apply to *Gilbert* because no suit was pending when Gilbert agreed to settled, so *Gilbert* is not an authority in this matter.

### B. The Alleged Loan Modification Falls into the
### Statute of Frauds and No Exception Applies

In the alternative to its settlement argument, SNLEE argues that the Parties agreed

to a loan modification.  SNLEE acknowledges that loan modification would fall within the

statute of frauds, but SNLEE argues that "promissory estoppel may be used to bar the

application of the statute of frauds and allow enforcement of an otherwise unenforceable

oral promise."  *Id.* (quoting *Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d

636, 654 (Tex. App.—Dallas 2015, no pet.).  However, the *Blackstone* court explains next

that "[p]romissory estoppel defeats a statute of frauds defense if a plaintiff proves all

elements of a cause of action for promissory estoppel in addition to showing that the

defendant promised to sign a written document complying with the statutes [sic] of frauds."

*Blackstone Med., Inc.*, 470 S.W.3d at 654–55.  SNLEE does not argue that Origin made a

promise to sign a document that would allow this alleged modification to comply with the

statute of frauds; therefore, this exception does not apply.

SNLEE next argues that another exception to the writing requirement of the statute

of frauds is partial performance.  Pl.'s Resp. 47 (citing *Parks v. Landfill Mktg. Consultants,

Inc.*, 2004 WL 13515445, at *4 (Tex. App.—Houston [14th Dist.] June 17, 2004, pet.

denied) ("[P]artial performance takes a contract out of the statute of frauds when the party

seeking enforcement of the contract partially performed.").  SNLEE argues that it partially

performed on this contract when it exchanged funds with Origin.  *See* Pl.'s Resp. 47.

However, this exception to the statute of frauds does not apply here because "one of the

exception's requirements is that the performance on which the party relies must be

'*unequivocally referable* to the agreement.'" *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 426 (Tex. 2015) (emphasis in original) (quoting *Chevalier v. Lane's*, 213 S.W.2d 530, 533 (Tex. 1948)). "If the evidence establishes that the party who performed the act that is alleged to be partial performance could have done so for some reason other than to fulfill obligations under the oral contract, the exception is unavailable." *Nat'l Prop. Holdings*, 453 S.W.3d at 426–27. SNLEE's exchanging of funds could be reasonably tied to Origin's agreement to drop the lawsuit without any other agreement made between the Parties. Therefore, the Court cannot conclude that the actions taken by SNLEE were unequivocally referrable to an alleged agreement between the two Parties to modify the Loan to nullify the waiver-of-defenses and payment provisions of the Loan. As such, SNLEE's statute of frauds exception argument fails. Consequently, SNLEE's argument alleging an oral contract modifying the terms of the Loan and every affirmative defense that rests on such an agreement fails as a matter of law. Because no settlement or modification of the Loan exists, the Court grants partial summary judgment of liability on Origin's breach of contract claims, subject to SNLEE's affirmative defenses.

### C.  All Other Affirmative Defenses Fail as a Matter of Law

*1. SNLEE Fails Its Burden to Prove Why Its Equitable Defenses Apply in This Case. —* Origin correctly argues that equitable defenses are generally "available against the assertion of equitable rights, and may not be invoked to resist the enforcement of a purely legal right," like breach of contract. *Wayne v. A.V.A. Vending, Inc.*, 52 S.W.3d 412, 415 (Tex. App.—Corpus Christi 2001, pet. denied) (discussing laches); *see also, e.g., Madhavan A. Pisharodi, M.D., P.A. v. United Biologics, L.L.C.*, 2020 WL 1443561, at *6

MEMORANDUM OPINION AND ORDER – PAGE 20

(Tex. App.—San Antonio Mar. 25, 2020, pet. denied) (discussing "unclean hands") (quoting *Dillard v. Broyles*, 633 S.W.2d 636, 645 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.); *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 770 (Tex. 2005) (discussing voluntary-payment).  Though SNLEE points out that there are courts in Texas that have allowed exceptions to this general rule, SNLEE provides no arguments as to why this case presents exceptional circumstances where an equitable defense should still be available; therefore, SNLEE has not met its burden of proof.  SNLEE may assert equitable defenses to Origin's equitable claims; however, Origin's equitable claims are precluded by the Court's ruling in favor of Origin's breach of contract claims.  Def.'s Mot. Summ. J. 48. Because the Court grants both of Origin's breach of contract claims, the Court dismisses all of Origin's equitable claims as moot and dismisses all SNLEE's equitable defenses.

   *__2. All Other Affirmative Defenses Fail as a Matter of Law.__* **—** SNLEE also asserts the affirmative defenses of offset, failure to mitigate, fraud, and lack of consideration. Regarding offset, SNLEE argues that "in the unlikely event of any recovery against SNLEE, it would have to be offset against the higher damages award in favor of SNLEE." Pl.'s Resp. 50.  As the Court dismissed all SNLEE's claims in this Order, none of SNLEE's claims for relief survive to support this offset argument.  Furthermore, Origin argues that no evidence supports the failure-to-mitigation argument.  Def.'s Mot. Summ. J. 49.  The burden of proof now shifts to SNLEE and "[t]he party asserting failure to mitigate has the burden of proving facts showing lack of such mitigation and must also show the amount by which the damages were increased by failure to mitigate."  *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687 (Tex. App.—Fort Worth 2006, pet. denied),

MEMORANDUM OPINION AND ORDER – PAGE 21

*disapproved on other grounds by Ritchie v. Rupe*, 443 S.W.3d 856 (Tex. 2014).  SNLEE fails produce evidence showing how damages have *increased* by Origin's failure to mitigate.  Furthermore, Texas law is clear that a claimant has a duty to mitigate damages if it can do so with "trifling expense or with reasonable exertions."  *Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 857 (Tex. 1999) (citations omitted).  SNLEE offers no theory of how Origin could have mitigated damages with reasonable efforts; therefore, the Court dismisses SNLEE's failure to mitigate affirmative defense.

Finally, SNLEE's fraud and lack of consideration defenses fail.  SNLEE cites no evidence to support the elements of fraud.  The Court dismisses SNLEE's lack of consideration affirmative defense as moot because Origin's indemnification affirmative defense is no longer at issue due to the Court's dismissal both of SNLEE's claims.  Accordingly, the Court dismisses SNLEE's remaining affirmative defenses.

## CONCLUSION

For the reasons set forth above, the Court grants Origin's motion for partial summary judgment on SNLEE's affirmative claims, dismissing all SNLEE's claims with prejudice.  Furthermore, the Court grants partial summary judgment of liability on Origin's breach of contract claims.  The Court dismisses as moot all of Origin's equitable counterclaims.  For the same reason stated above, the Court denies SNLEE's motion for partial summary judgment [113].  The issue of Origin's damages remains pending.

Signed March 19, 2024.

_____
David C. Godbey
Chief United States District Judge