IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SALT AND LIGHT ENERGY EQUIPMENT, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:22-CV-00654-N |
| ORIGIN BANCORP, INC., | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Origin Bancorp, Inc.'s ("Origin") motion for attorney's fees and related nontaxable expenses [219].[1]  For the following reasons, the Court grants the motion, but awards reduced fees as specified below.

### I.  ORIGINS OF THE DISPUTE

This case involves a loan that was secured by a security agreement encumbering Plaintiff Salt and Light Energy Equipment, LLC's ("SNLEE") assets and a guaranty executed by SNLEE's principals, Counter-Defendants Prasanth Mudigere and Denise McCormack (formerly Denise Mudigere).[2]  *See* Mem. Op. & Order (Mar. 19, 2024) 1–4 [163].  On February 3, 2025, this Court entered judgment in favor of Origin on both

---

[1]  The Court also grants Origin's motion to file a supplemental summary of its fees request [238].

[2]  The underlying facts and procedural history of this case are well established, *see Salt & Light Energy Equipment, LLC v. Origin Bancorp, Inc.*, 724 F. Supp. 3d 586, 589–91 (N.D. Tex. 2024), and the Court will not recount them in great depth here.

MEMORANDUM OPINION AND ORDER – PAGE 1

SNLEE's claims and on Origin's counterclaims against SNLEE, Mudigere, and McCormack.  *See* Final J. (Feb. 3, 2025) 1–2 [217].

Origin then filed a motion for attorney's fees and related nontaxable expenses, requesting $1,356,037.25 in attorney's fees and $61,956.60 in related nontaxable expenses jointly and severally against SNLEE, Mudigere, and McCormack.  *See* Def.'s Mot. Br. 1 [220]; Def.'s Reply 8 [234]; Def.'s Mot. Suppl. 2 [238].  Origin bifurcated its attorney's fees request into fees associated with (1) defending against claims brought by SNLEE ("Defensive Fees") and (2) pursuing claims against SNLEE, Mudigere, and McCormack ("Affirmative Fees").  Def.'s Mot. Br. 4.  Origin seeks $1,206,037.25 in Defensive Fees.  *Id.*; *see also* Def.'s Reply 8; Def.'s Mot. Suppl. 2.  And although Origin incurred around $250,000 in Affirmative Fees, it stipulated to capping its request for Affirmative Fees at $150,000.  Def.'s Mot. Br. 4–5; *see also* Joint Stipulation ¶ 3 [216].

Origin asserts that it is entitled to these attorney's fees and related nontaxable expenses pursuant to two contracts: the Revolving Credit and Security Agreement (the "Security Agreement") and the Guaranty Agreement (the "Guaranty").  Def.'s Mot. Br. 3–4.  The Security Agreement states,

> In the event . . . [SNLEE] shall assert against [Origin] . . . a claim or defense arising out of or relating to any of the Collateral, the Liabilities, or any of the Loan Documents, [SNLEE] agrees to indemnify and hold [Origin] harmless from and against any . . . cost, attorneys' fees or other expense whatsoever arising therefrom.

Def.'s Mot. App. 676 [221].  Relatedly, the Guaranty states,

MEMORANDUM OPINION AND ORDER – PAGE 2

> [Mudigere and McCormack] hereby absolutely and unconditionally guarantee[] to [Origin] the prompt payment at maturity and the prompt performance when due of the following: . . . (i) all indebtedness and obligations of any kind of [SNLEE] to [Origin] including . . . charges and attorneys' fees which may be or become due and owing on or under or in connection with the Note, . . . and (iii) all costs, attorneys' fees and expenses incurred or expended by [Origin] in collecting any of the Obligations or due to any default in the performance of the Obligations or in enforcing any right granted hereunder.

*Id.* at 706.

SNLEE filed a response in opposition to Origin's request for attorney's fees and related expenses, *see generally* Pl.'s Resp. [230], but neither Mudigere nor McCormack filed a response.

## II. LEGAL STANDARD FOR ATTORNEY'S FEES

In a diversity case, state law governs the award of attorney's fees. *See, e.g.*, *Chevron USA, Inc. v. Aker Mar. Inc.*, 689 F.3d 497, 505 (5th Cir. 2012). Texas law does not allow recovery of attorney's fees unless authorized by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). Section 38.001 of the Texas Civil Practice and Remedies Code provides that a party "may recover reasonable attorney's fees from an individual or organization . . . , in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE § 38.001(b)(8). In addition to the statutory right to recover fees under section 38.001, parties "are free to contract for a fee-recovery standard either looser or stricter than Chapter 38's." *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009); *see also Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484–85 (Tex. 2019).

MEMORANDUM OPINION AND ORDER – PAGE 3

If "the non-prevailing party is subject to paying the prevailing party's attorney's fees, the fees must be reasonable and necessary for success in prosecuting or defending the claim, and the award is intended to compensate the prevailing party generally for its legal representation." *Rohrmoos*, 578 S.W.3d at 496. To determine the reasonableness of an attorney's fees request, the court must first "determine a base lodestar figure based on reasonable hours worked multiplied by a reasonable hourly rate." *Id.* at 501. Then, the court may adjust the lodestar "if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case." *Id.* (quoting *El Apple I, Ltd. v. Olivas,* 370 S.W.3d 757, 760 (Tex. 2012)). Such factors include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). However, "considerations already incorporated into the base calculation may not be applied to rebut the presumption that the base calculation reflects reasonable and

MEMORANDUM OPINION AND ORDER – PAGE 4

necessary attorney's fees." *Rohrmoos*, 578 S.W.3d at 501. A "claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought."[3] *Id.* at 501–02.

### III. THE COURT AWARDS ORIGIN REDUCED ATTORNEY'S FEES

Origin requests $1,356,037.25 in attorney's fees, bifurcated into $1,206,037.25 in Defensive Fees and $150,000 in Affirmative Fees. *See* Def.'s Mot. Br. 4–5; Def.'s Reply 8; Def.'s Mot. Suppl. 2. The Court first determines whether Origin is entitled to attorney's fees under the Security Agreement and Guaranty, then analyzes the reasonableness of Origin's attorney's fees request.

#### A. Origin is Entitled to Attorney's Fees Under the Agreements

As an initial matter, the Court addresses whether Origin is entitled an attorney's fees award. Origin asserts that the controlling contracts — the Security Agreement and the Guaranty — stipulate that Counter-Defendants must indemnify Origin for its attorney's fees. Def.'s Mot. Br. 3–4; *see also* Def.'s Mot. App. 676, 706.

SNLEE argues that Origin cannot recover attorney's fees under the Security Agreement because (1) under the Uniform Commercial Code, Origin cannot disclaim

---

[3] Origin argues that because the contracts at issue include the phrases "any . . . attorney's fees whatsoever" and "all . . . attorney's fees," rather than "reasonable" attorney's fees, the burden rests with Counter-Defendants to demonstrate the request's unreasonableness. Def.'s Mot. Br. 4. However, the Fifth Circuit has rejected this argument, holding that the claimant bears the burden of demonstrating reasonableness even if a clause in the parties' contract obligates payment of a specified percentage of attorneys' fees. *In re 804 Cong., L.L.C.*, 756 F.3d 368, 377–78 (5th Cir. 2014) (citing *F.R. Hernandez Constr. & Supply Co. v. Nat'l Bank of Com. of Brownsville*, 578 S.W.2d 675, 676–77 (Tex. 1979) and *Garcia v. Gomez*, 319 S.W.3d 638, 646 (Tex. 2010)).

MEMORANDUM OPINION AND ORDER – PAGE 5

responsibility for its lack of good faith or failure to exercise good care, and (2) the indemnification clause does not satisfy the fair-notice requirements of Texas law. *See* Pl.'s Resp. 3–5. However, the Court determines that these principles do not prevent Origin from being entitled to an attorney's fees award here because Origin has not been found to be liable for negligence or lack of good faith. Contrary to SNLEE's assertions, Texas law recognizes and enforces provisions like the one here, in which guarantors and borrowers shall reimburse banks for attorney's fees incurred in connection with pursuing and defending their rights under notes and guaranties. *Cap. One, N.A. v. Massey*, 2011 WL 3299934, at *4 (S.D. Tex. 2011) (citing *F.R. Hernandez*, 578 S.W.2d at 677). Accordingly, Origin is entitled to an award of attorney's fees under the Security Agreement and Guaranty.

### B. The Court Awards Origin $909,334.10 for Its Defensive Fees

Next, the Court determines whether Origin's request of $1,206,037.25 for its Defensive Fees is reasonable.[4] Considering the reasonableness of the requested billing rates and the hours worked, the Court adjusts the requested law clerk and paralegal hourly rates and applies a twenty-five percent reduction across the board to the number of hours worked to account for lack of billing judgment.

---

[4] Because the motion for summary judgment involved both Origin's claims and SNLEE's claims, Origin was unable to precisely segregate the fees, so it split them evenly between its Affirmative Fees and Defensive Fees requests. *See* Def.'s Mot. Br. 4. Moreover, because the ratio of Defensive Fees to Affirmative Fees prior to judgment is about ninety percent to ten percent, Origin attributed the attorney's fees expended in preparing the motion for the attorney's fees and the bill of costs at that ratio. *Id.*

MEMORANDUM OPINION AND ORDER – PAGE 6

*1. **Reasonableness of the Billing Rates*** — The Court first analyzes the reasonableness of Origin's requested billing rates. "Reasonable" billing rates are calculated according to the "prevailing market rates in the relevant community." *Rohrmoos*, 578 S.W.3d at 493 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–52 (2010)). In addition to recovering attorney's fees, the prevailing party can recover reasonable fees for the work of paralegals. *See Tite Water Energy, LLC v. Wild Willy's Welding LLC*, 2023 WL 5615816, at *11 (Tex. App. — Houston [1st Dist.] 2023, pet. denied) (mem. op.) (unpub.) (awarding fees for paralegal's work).

First, the Court decides that Plaintiffs' requested attorney rates are in line with prevailing market rates in the relevant community. Recent Northern District of Texas decisions indicate that the prevailing market rate in commercial litigation cases is around $300–$700 per hour for attorneys, increasing based on level of experience. *See HMC RFG Invs. LLC v. Jones*, 2024 WL 2853953, at *2 (N.D. Tex. 2024) (describing prevailing market rates established in recent cases); *White Cap LP v. McSpadden*, 2024 WL 5440869, at *2 (awarding hourly rates between $445 and $705); *UFO Plast Italy, S.R.L. v. Ed Tucker Distrib., Inc.*, 2024 WL 4426190, at *2 (N.D. Tex. 2024) (stating that hourly rates between $325 and $550 are within the prevailing market rate, if not slightly low). Here, Origin proposes hourly rates between $400 and $650 for its attorneys, increasing based on level of experience.[5]  *See* Def.'s Reply App. 007–09 [235]. The Court holds that the proposed rates are reasonable as the rates are consistent with the

---

[5] Origin proposes an hourly rate of $650 for Mazin Sbaiti and Jonathan Bridges; $550 for Bradford Robinson and Kevin Colquitt; $500 for Caleb Davis; and $400 for Griffin Rubin. *Id.*

prevailing market rates for attorneys with similar levels of experience in the Dallas-Fort Worth legal community.

Second, the Court analyzes whether the requested paralegal rates are in line with prevailing market rates. Origin proposes hourly rates of $200 for paralegal Kim James and $175 for paralegals Robin McCormack, Melissa Pittmon, and Sheryl Haywood. Def.'s Reply App. 010. Origin submitted evidence that James has been a paralegal for over thirty-five years and that McCormack, Pittmon, and Haywood have been paralegals for around twenty years. *Id.* Origin also proposes hourly rates of $175 for Briana Rodriguez and Donald Delany and $125 for Minnie Ryder, Dallas Shook, Akia Monette, and Cheryl Smith, but did not provide any evidence as to their levels of experience. *See* Def.'s Mot. Suppl. App. 3, 6 [238-1]. Recent Northern District of Texas decisions indicate that the prevailing hourly rate for paralegals is $100–210 per hour. *Kunze v. Baylor Scott & White Health*, 2024 WL 4606800, at *2 (N.D. Tex. 2024) (Godbey, C.J.); *see also Ferrari Fin. Servs., Inc. v. Yoo*, 2025 WL 793653, at *5 (N.D. Tex. 2025), *adopted*, 2025 WL 790341 (N.D. Tex. 2025) (awarding hourly rate of $190 for paralegals). Given the experience of James, McCormack, Pittmon, and Haywood, the Court holds that their proposed rates are consistent with the prevailing market rates for paralegals of comparable experience in the Dallas-Fort Worth legal community. However, without evidence regarding the experience of Rodriguez, Delany, Ryder, Shook, Monette, and Smith, the Court lowers their hourly rates to the $100 baseline.

Third, the Court analyzes whether Origin's requested hourly rate of $150 for its law clerks is in line with the prevailing market rate. *See* Def.'s Mot. Suppl. App. 3–4.

MEMORANDUM OPINION AND ORDER – PAGE 8

Origin did not submit evidence regarding the backgrounds of its law clerks.  The Court finds that $150 is a high law clerk rate compared to the prevailing market rate and thus reduces the law clerk rate to $85.  *See Kunze*, 2024 WL 4606800, at *2 (citing *Williams v. Sake Hibachi Sushi & Bar Inc.*, 574 F. Supp. 3d 395, 411 (N.D. Tex. 2021)).

   *2. Reasonableness of the Hours Billed* — The Court next determines whether the number of hours billed was reasonable.  Courts "should obtain sufficient information to make a meaningful evaluation of the application for attorney's fees.  Charges for duplicative, excessive, or inadequately documented work should be excluded."  *El Apple*, 370 S.W.3d at 762.  SNLEE challenges the reasonableness of the hours Origin billed. *See* Pl.'s Resp. 7–9.

   First, the Court decides that a reduction in the number of hours billed is appropriate because there are numerous redacted billing entries that do not provide enough information for the Court to determine the reasonableness of the fees.  Under Texas law, courts "allow parties to redact billing records so long as the Court still has sufficient information to determine the reasonableness of the fees."  *EHO360, LLC v. Opalich*, 2025 WL 1638923, at *4 (N.D. Tex. 2025).  However, redacted "entries must be excluded if they do not provide sufficient information to classify and evaluate the activities and hours expended."  *Id.* (quoting *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 800 (S.D. Tex. 2009)).  Here, many of the bills Origin submitted include entries with redactions making it difficult for the Court to determine the reasonableness of the fees.  Examples of redacted entries include: "Strategize with team regarding [redacted]";

MEMORANDUM OPINION AND ORDER – PAGE 9

"conferring with B. Robinson re [redacted]"; and "Communicate with client regarding [redacted]." *See, e.g.*, Def.'s Mot. App. 002.

Second, the Court determines that the requested fees include many instances of paralegals performing clerical work as opposed to substantive legal work. To recover fees for work performed by nonattorneys, the evidence must show that the nonattorneys "performed substantive legal work under the direction and supervision of an attorney." *See El Apple,* 370 S.W.3d at 763. Clerical tasks include, among other things, reviewing court notices, filing documents, notifying clients and counsel of deadlines, reviewing court notices, scheduling, preparing filings, and maintaining files. *Meadows v. Latshaw Drilling Co.*, 2020 WL 291582, at *4 (N.D. Tex. 2020). Here, Origin requests fees for numerous hours of noncompensable clerical work. *See, e.g.*, Def.'s Mot. App. 002 ("organize and bates label exhibits to be used in the Appendix"); 015 ("update calendar/case deadlines chart with brief deadlines and send invites"); 085 ("Review M. Sbaiti's calendar and discuss his availability to cover depo with B. Robinson"); 115 ("Leave Voicemail with J. Foster, Court Reporter for Judge Godbey, to request transcript"); 125 ("pull all loan documents including those used as exhibits to Origin's MSJ and add to C. Davis working folder").

Third, the Court holds that the requested fees include entries for excessive — or inadequately documented — work. For example, Origin requests fees for around eighty hours of work preparing a response to the motion to remand.[6] *See* Def.'s Mot. App. 015–

---

[6] The Court cannot determine an exact number of hours requested for work on the response to the motion to remand due to Origin's counsel's block billing.

MEMORANDUM OPINION AND ORDER – PAGE 10

21. And many of the billing entries related to this filing are vague, such as "Draft and revise Response to Motion for Remand" and "Research remand issue for response." *See id.* at 020. These descriptions do not provide enough information for the Court to conclude that the seemingly high number of hours spent on the response to the motion for remand were necessary. This indicates a lack of exercise of billing judgment warranting an adjustment to the number of hours requested.

Thus, to exclude charges for redacted billing entries in which the Court cannot determine whether the hours worked were reasonable, entries for clerical work, and entries with excessive (or inadequately documented) hours, the Court applies a twenty-five percent reduction to Origin's submitted number of hours worked.[7] Upon adjusting the hourly rates of the paralegals and law clerks and applying this reduction, the Court determines that an adjusted base lodestar of $909,334.10 is appropriate for Origin's Defensive Fees.[8]

Lastly, after reviewing the *Arthur Andersen* factors not incorporated into the base lodestar calculation, the Court determines that a further adjustment to the lodestar is not warranted. Accordingly, the Court awards Origin $909,334.10 in Defensive Fees.

---

[7] In making the calculation, the Court segregates between Affirmative Fees and Defensive Fees for the motion for summary judgment and the motion for attorney's fees and reply as Origin suggested, attributing fifty percent of the fees for the motion for summary judgment to Defensive Fees and ninety percent of the fees for the motion for attorney's fees and reply in support of the motion for attorney's fees to Defensive Fees.

[8] The Court makes this calculation based on the amounts billed as described in Origin's supplemental appendix. *See* Def.'s Mot. Suppl. App. 2–7. The numbers in the supplemental appendix do not perfectly align with Origin's requested $1,206,037.25 in Defensive Fees. *See* Def.'s Mot. Suppl. 2.

MEMORANDUM OPINION AND ORDER – PAGE 11

### C.  *The Court Awards Origin $150,000 for its Affirmative Fees*

Next, the Court analyzes Origin's request for an award of $150,000 for its Affirmative Fees.  Def.'s Mot. Br. 4–5.  Origin submitted billing entries reflecting that it incurred around $250,000 in Affirmative Fees, but it stipulated to seeking the lower amount.  *Id.*; *see also* Joint Stipulation ¶ 3.  Given that Origin has agreed to forego around $100,000 in Affirmative Fees, and this voluntary adjustment covers any adjustments to the requested fees that the Court would have made, the Court determines that the request for $150,000 is reasonable and accordingly awards Origin $150,000 in Affirmative Fees.

### IV.  THE COURT AWARDS ORIGIN RELATED NONTAXABLE EXPENSES

Origin also requests $61,956.60 in nontaxable expenses related to its attorney's fees.  *See* Def.'s Mot. Br. 5–6.  Origin is entitled to payment for its costs and expenses under the Security Agreement and Guaranty.  *See* Def.'s Mot. App. 676, 706.  Origin submitted receipts to the Court for its requested expenses.  *See id.* at 281–663.  Neither SNLEE nor Mudigere or McCormack filed objections to Origin's requested expenses.  Accordingly, the Court awards Origin $61,956.60 in nontaxable expenses.

### CONCLUSION

The Court awards Origin $1,059,334.10 in attorney's fees and $61,956.60 in related nontaxable expenses, to be paid jointly and severally by SNLEE, Mudigere, and McCormack no later than thirty (30) days after the date of this Order, unless superseded on appeal.

MEMORANDUM OPINION AND ORDER – PAGE 12

Signed August 12, 2025.

David C. Godbey
United States District Judge